(111 App. Div. 585)

### McDONOUGH v. PELHAM HOD ELEVATOR CO.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. MASTER AND SERVANT—FELLOW SERVANTS.

Where the owner of a hod elevator furnished it in charge of his own engineer to a building contractor for an agreed price, the engineer operating the elevator was not a fellow servant of a workman employed by the building contractor.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 480-485.]

2. SAME—INJURY TO THIRD PERSONS—PRESUMPTIONS.

In an action for injuries sustained by a workman while riding on a hod elevator which was installed for the purpose of carrying building materials, and not passengers, it was presumable that the workman was riding on the elevator without the consent of the owner thereof.

3. SAME—LIABILITY OF MASTER.

Where the owner of a hod elevator furnished it with his own engineer for an agreed price to a building contractor, the fact that the engineer consented to workman riding on the elevator gave them no right so to do unless the engineer was acting within the scope of his authority in giving such consent.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1217-1225.]

4. SAME—IMPLIED AUTHORITY.

Where the owner of a hod elevator rented it together with his own engineer to a building contractor for the purpose of elevating materials, the engineer had no implied authority to permit workmen employed by the building contractor to ride on the elevator.

5. CUSTOMS AND USAGES—EVIDENCE—EXTENT OF CUSTOM.

In an action by a workman employed by a building contractor for injuries received while riding on a hod elevator rented to the contractor by a third person, evidence that it was customary for the workmen to ride on the elevator did not show a general custom binding upon the owner of the elevator.

6. MASTER AND SERVANT—INJURY TO THIRD PERSONS—LIABILITY OF MASTER.

Where the owner of a hod elevator rented it in charge of his own engineer to a building contractor, the fact that the engineer made a prac-

tice of allowing workmen employed by the contractor to ride on the elevator did not estop the owner of the elevator from insisting in an action against him by one of the workmen for injuries caused by the negligent operator of the elevator while he was riding on it, that the engineer had no authority to allow the workman to ride.

Appeal from Trial Term, New York County.

Action by John McDonough against the Pelham Hod Elevator Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Goeller, Shaffer & Eisker (Robert Goeller, of counsel), for appellant.

Frederick E. Fishel (George Gordon Battle, of counsel), for respondent.

CLARKE, J. This was an action to recover damages incurred by the alleged negligence of the defendant in operating a hod elevator which it had installed for hire in a building in process of erection. The plaintiff was an employé of the contractor for the erection of the building. The complaint having been dismissed, it will be necessary to consider only the claims made by the plaintiff to show that the dismissal was error. We are all agreed that the plaintiff, the employé of the builder, was not a fellow servant of the engineer of the defendant whose negligence is claimed to have caused the injuries complained of. The defendant furnished its elevator, boiler and engineer for an agreed price and there was no common employer or common employment, nor was the engineer the servant ad hoc of the builder. Mills v. Thomas Elevator Co., 54 App. Div. 124, 66 N. Y. Supp. 398, affirmed 172 N. Y. 660, 65 N. E. 1119.

The plaintiff was injured by the negligence of the defendant's servant while riding on an elevator built and installed for the purpose primarily, of carrying building materials to the different floors of the building in which plaintiff was at work. In view of the fact that this elevator was installed for the purpose of carrying building materials and the further fact that there were on it none of the safety guards or appliances to be found on a passenger elevator, the presumption is that the plaintiff was riding on it without the consent of the defendant. If such was the case plaintiff cannot recover, for defendant was under no duty to transport him from the ground floor of the building to the floors above, and if the engineer attempted to do so he was acting entirely outside the limits of his authority, and the defendant is not responsible for his negligent acts in so doing. The burden is therefore upon the plaintiff to show that he was rightfully upon the elevator, and, in order to do this, that he was there with defendant's permission, either express or implied.

It is not contended that plaintiff had defendant's express permission to go up on the elevator. Was such permission implied? The presumption is that it was not, because this elevator was not built to carry passengers. The plaintiff has not introduced sufficient evidence to overcome this presumption. He says that defendant's engineers consented to his going up on the elevator. This consent will not avail

plaintiff, unless the engineer in giving it can be said to have acted within the scope of his authority. He had not express authority to give this consent. Had he implied authority? He was not a general agent, but an agent put there for the special purpose of running a freight elevator. He was impliedly authorized to do all acts necessary to the carrying out of this special duty. Was it necessary for the accomplishment of this object for the engineer to carry plaintiff on the elevator? Plaintiff does not claim that he was taking any materials up with him or to have been on there for the purpose of keeping materials from falling off the elevator, or for the purpose of unloading the elevator when it got to the upper floors. He was on there simply for the purpose of getting to the sixth floor of the building. Clearly, carrying him on the elevator was in no way necessary for the accomplishment of the object which the engineer was intended to carry out.

Appellant contends that the engineer was put here by the defendant for the purpose of aiding in the quick construction of this building, and, as carrying the plaintiff on the elevator enabled him to get more quickly to his work, the engineer was acting within the scope of his authority. The answer to this argument is that the engineer was not put there for the purpose of doing everything that would aid in the quick construction of the building, simply those things in the line of his duties as an engineer of a freight elevator.

Appellant contends that the contract being silent as to whether or not passengers should ride on the elevator, the contract was subject to the known usages of the business, and that it was shown that carrying passengers was customary in this business. The answer to this argument is that there is no evidence in the record of a general custom of this nature, the only evidence is to the effect that the men did it in this instance, which is not evidence of a general custom in the business, which should have been known to the defendant at the time it supplied this elevator. Appellant contends that since the men rode on this elevator openly and notoriously for weeks without the objection of the defendant, and not knowing the nature of the engineer's instructions in the matter, defendant is estopped to deny the engineer's authority, and to claim that defendant was not lawfully on the elevator. There are two difficulties with this argument: First, that the cases cited in support of it are all cases of contracts made by the agent outside the scope of his authority, where the principal has reaped the benefits thereof, and I have been unable to find any case which applies the doctrine of agency by estoppel to a case of this kind. The other difficulty with the argument is that this is not a case in which the plaintiff has been misled by the agents' acts into believing that the defendant authorized him to ride on this machine for the machine was obviously dangerous, and that the plaintiff realized the danger is shown by his confessed reluctance to riding on it.

The only case cited by appellant which approaches an authority in favor of his contention is Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575. That was a case in which plaintiff was injured while riding on a

grain elevator.  It appeared in evidence that plaintiff was in the employ of defendant who owned the elevator and that defendants' superintendent had directed the servants employed in moving grain to ride on the elevator while doing their work.  It also appeared that on the trip in which plaintiff was injured he put on a load of grain, and went up with it for the purpose of taking it off the elevator.  In so doing he was working for the benefit of the defendant.  These facts are sufficient to show that the case is not an authority in point.  In the case at bar the plaintiff was not directed by the engineer of the defendant to go up on the elevator and in going up on the elevator, he could not be said to be in any way acting for the benefit of defendant, whose servant he was not.

In Eaton v. D. L. & W. R. R. Co., 57 N. Y. 382, 15 Am. Rep. 513, it was held that conductors of freight trains cannot create any liability on the part of their principal, to a person taken by them on such trains, unless the principal in some way assents to it, and that duty to be careful toward him could only spring up on the part of the principal by an act on the conductors' part coming within the scope of his authority. The case of Morris v. Brown, 111 N. Y. 318, 18 N. E. 722, 7 Am. St. Rep. 751, seems to be directly in point.  In that case, a civil engineer employed by the aqueduct commissioners got upon a car operated by the defendant as contractor for the construction of a tunnel at the Croton Dam.  The cars were operated by a stationary engine and cable to draw material out of a shaft.  By the omission of defendant's servant to attach the cable to the car, or otherwise control its velocity, the decedent was thrown off, and killed.  Judge Danforth speaking for an unanimous court said:

"As they [the cars] were not furnished for such use, so there was no permission from the defendants or any one of them that they might be so used.  But it is said this permission might be implied, because the intestate and others had before ridden upon the cars.  Without permission from or duty on the part of the defendants to give it, I cannot see how that result follows.  On the contrary, a person so using the car at each time took upon himself the risk and must abide by its condition and the quality of the attendant at the time he so used it, and was entitled only not to be lead into danger.  Negligence is an omission of care and caution in what we do.  But the duty to be actively cautious and vigilant is relative, and where that duty has no existence between particular parties, there can be no such thing as negligence in the legal sense of the term.  The plaintiff was in no position to complain of the defendants or their servants.  The frame and dump the intestate got upon was not a vehicle for his carriage, but an instrument of labor, a mere implement furnished by the defendants to their servants, as they might have a man with a basket or barrow, or a mule with panniers to take out the refuse, as in former times was the custom in doing such work.  *  *  *  The plaintiff had a right to be in the tunnel for its inspection.  The contract put the defendants under no obligation to carry him into the tunnel, nor by it did he acquire any right to be upon the car.  Nor did he acquire that right through any consent or act or acquiescence on the part of the defendants.  All the witnesses agree that no permission was given by the defendants; no evidence tends to show that they even knew the car was at any time so used.  The brakeman of the car had known it, but neither his knowledge nor assent could bind the defendants.  He was not their agent for that purpose.  It is a general proposition that a master is chargeable with the conduct of his servant, only when he acts in the execution of the authority given him.  *  *  *

The deceased had, in fact, ridden upon the car; he had done so under no other permission, a volunteer, but in safety. In each instance, however, he must be deemed to have assumed the risk, and this last time he was unfortunate. The consequences of that misfortune should not be thrown upon the defendants."

The judgment should be affirmed, with costs. All concur.